Allen, J.
 

 While this case arises upon facts similar to those found in the case of
 
 Fisher Bros. Co.
 
 v.
 
 Brown, Secy. of State, ante,
 
 602, 146 N. E. , 100, this day decided, plaintiff in error herein raises a question of law entirely distinct from that raised in the
 
 Fisher case.
 
 Its sole contention is that the act of the Legislature in changing the line of classification from 35 horse power to 30 horse power, in view of the alleged discrimination which results therefrom, as shown, in plaintiff in error’s view, in the finding of fact by the Court of Appeals, violates Article I, Section 2, and Article II, Section 26, of the Constitution of Ohio, and the Fourteenth Amendment to the Constitution of the United States. These provisions guarantee the equal protection of the laws and the equal protection and benefit of government, and provide that all laws of a general nature shall have a uniform operation throughout the state.
 

 For the purpose of considering this contention we must examine the statute as originally passed and as amended. The original statute, 108 Ohio Laws, pt. 2, p. 1079, in its pertinent parts, reads as follows:
 

 
 *649
 
 Section 6292: “Each owner of a motor vehicle shall pay or cause to be paid taxes as follows: • # *»
 

 “For each passenger car having twenty-five horse-power or less, eight dollars; for each such car having more than twenty-five and not more than thirty-five horse-power, twelve dollars; for each such car having more than thirty-five horsepower, twenty dollars.
 

 “For each commercial car, the same tax based on horse-power, and in the same classifications as are herein provided for passenger cars, and in addition thereto twenty cents for each one hundred pounds gross weight of vehicle and load, or fractional part thereof.”
 

 As amended, 110 Ohio Laws, p. 222, this section reads as follows in the pertinent parts thereof:
 

 “Each owner of a motor vehicle shall pay or cause to be paid taxes as follows: * * *
 

 “For each commercial car having twenty-five horse-power or less eight dollars, and in addition thereto twenty cents for each one hundred pounds gross weight of vehicle and load or fractional part thereof.
 

 “For each commercial car having more than twenty-five and not more than thirty horse-power twelve dollars, and in addition thereto thirty cents for each one hundred pounds gross weight of vehicle and load or fractional part thereof.
 

 “For each commercial car having more than thirty horse-power twenty dollars, and in addition thereto eighty cents for each one hundred pounds gross weight of vehicle and load or fractional part thereof.”
 

 
 *650
 
 The hading of facts of the Court of Appeals holds that the elements composing the value of the privilege of operating a motor truck upon the highways of the state, upon which the tax herein questioned is based, are speed, weight and carrying capacity. A comparison in operation made between 4.000 trucks in actual operation in the state of Ohio, as found by the Court of Appeals, is to the effect that 2,000 trucks of various makes, having a rated horse power (under the S. A. E. formula) of 28.9, and an aggregate carrying capacity of 17.000. 000 pounds, and an aggregate weight of 19.000. 000 pounds, or a combined weight of vehicle and load of 36,000,000 pounds, pay a total tax under the amendment attacked of $132,000, or an average tax of $66 per vehicle. As against these 2.000 trucks the finding of fact shows that the other 2,000 trucks of various makes, the most of which have a rated horse power of 32.4 under the S. A. E. formula, having an aggregate carrying capacity of 16,872,300 pounds, and an aggregate weight of 20,951,700 pounds, or a combined weight of vehicle and load of 37,824,000 pounds, pay an aggregate tax of $334,000, or an average tax of $167 per track.
 

 The Court of Appeals also found that trucks which have a horse power rating between 28 plus and 30 horse power can and do transport over the highways of the state the same proportion of their respective carrying capacity and weight at the same rate of speed as those which have a rated horse power of 30 to 32 plus.
 

 It will be noted that the manufacturers’ rated horse power is not an actual horse power. It is
 
 *651
 
 at best an estimate of horse power, and for that reason the findings of the Court of Appeals cannot give us an absolutely accurate basis of determination, particularly in dealing with trucks of so many different makes, in which the manufacturers’ rating may vary widely. In fact, there is nothing in this record to show how horse power calculated under the S. A. E. formula compares with actual horse power.
 

 Moreover, the finding of the Court of Appeals is that trucks which have a horse power rating between 28 plus and 30 transport over the state highways the same proportion of their respective carrying capacity and weight at the same speed as trucks of 30 to 32 plus. This is very different from saying that the trucks which pay the lower tax can and do carry the same weight at the same rate of speed as the trucks which pay the larger tax. Plaintiff in error seems to base its argument upon the latter proposition, which is nowhere found by the Court of Appeals.
 

 It needs no argument to convince this court that the constitutionality of the act may be measured by the results brought about through its enforcement.
 
 Castle
 
 v.
 
 Mason,
 
 91 Ohio St., 296, 110 N. E., 463, Ann. Cas., 1917A, 164;
 
 Hixson
 
 v.
 
 Burson,
 
 54 Ohio St., 470, 43 N. E., 1000; and
 
 State ex rel.
 
 v.
 
 Spellmire,
 
 67 Ohio St., 77, 65 N. E., 619.
 

 Moreover, it is evident that certain inequalities have arisen in this situation, due to the fact that under the former statute, 108 Ohio Laws, p. 1078, as unamended, certain' heavy service truck's were constructed to come within the provisions of that
 
 *652
 
 statute which classified trucks of the larger size within a group of from 25 to 35 horse power. "With the alteration of the law, which now divides the classes at 30 instead of 35 horse power, creating a totally new group, inequalities are created.
 

 Plaintiff in error disclaims any intention to contend that the use of the IS; A. E. formula is unconstitutional. It says simply that the Legislature has not the power to take one-half of the heavy duty trucks in operation in Ohio out of the class in which they were previously placed, namely, from 25 to 35 horse power, and put them into another class and impose upon them a three times greater tax than before.
 

 Plaintiff in error cites no authorities in favor of its contention, but simply states that the statute in question attempts to classify motor trucks on the basis of horse power, and upon such basis makes a tremendous distinction at the line of 30 horse power, and seems to conclude the unconstitutionality of the act from this simple statement. That the classification upon the basis of horse power is constitutional has been held by this court in the companion case of
 
 Fisher Bros. Co.
 
 v.
 
 Brown, ante,
 
 602, 146 N. E., 100. This also is the universal rule in other jurisdictions.
 
 Lillard
 
 v.
 
 Melton,
 
 103 S. C., 10, 87 S. E., 421;
 
 Smith
 
 v.
 
 Commonwealth,
 
 175 Ky., 286, 194 S. W., 367;
 
 Kane
 
 v.
 
 New Jersey,
 
 242 U. S., 160, 37 S. Ct., 30, 61 L. Ed., 222;
 
 Hendrick
 
 v.
 
 Maryland, 235
 
 U. S., 610, 35 S. Ct., 140, 59 L. Ed., 385;
 
 Cleary
 
 v.
 
 Johnston,
 
 79 N. J. Law, 49, 74 A., 538;
 
 In re Schuler,
 
 167 Cal., 282, 139 P., 685, Ann. Cas., 1915C, 706.
 

 Plaintiff in error also claims that, in the case
 
 *653
 
 of heavy trucks, horse power has no relation to the damage done to roads directly or through any relation of speed or weight.
 

 It is agreed that a special privilege tax upon motor vehicles for the use of the roads must bear a reasonable relation to the damage to the roads done by automobiles.
 
 Kane
 
 v.
 
 State,
 
 81 N. J. Law, 594, 80 A., 453, L. R. A., 1917B, 553, Ann. Cas., 1912D, 237;
 
 Southern Gum Co.
 
 v.
 
 Laylin,
 
 66 Ohio St., 578, 64 N. E., 564.
 

 If plaintiff in error had established his proposition as a fact, these cases would support his contention. But there is evidence in the record that horse power has some relation to the potential speed, weight, and carrying power of a commercial motor vehicle. Quoting from the testimony given by an engineer familiar with the operation of motor trucks throughout the state:
 

 “Q. Mr. Wells, say take a five-ton truck of approximately the same weight and 32 horse power and a truck of say the same weight and 28 horse power — 29—with the same weight and load and the difference in horse power, could you develop more speed with the larger horse power on a hard-surface road? A. Well, that all depends on the— carries back to the question of your gear ratio and so forth as the power is transmitted to the rear wheel, and the speed of your motor.
 

 “Q. Well, say all things were equal, say the speed of the motor—
 

 “A. And transmit the power to the rear end and all that?
 

 “Q. And the method of transmission of power —everything was equal? A. Naturally the larger
 
 *654
 
 motor will give you more speed and more power in that ease.
 

 “Q. With a tendency towards more destruction of the road on account of the increased speed? A. On account of the increased speed, yes, sir.”
 

 It is true that the same witness testified that there is always a difference in all the cases that he knows of in the gear ratio and in the speed of the motor; that is, that conditions are never absolutely equal. However, granting that to be the case, the testimony foregoing does show that horse power has a relation to doing of work by a machine. Moreover, the chief engineer of a large motor truck company testified that he did not believe that there could be a smaller bore engine which would develop more horse , power than one which was larger, saying:
 

 “If you design a small engine, and then design a large engine equally as well, the larger engine will have much greater torque.”
 

 This same witness testified that' you cannot have a smaller bore engine with more torque than a large bore engine if the same amount of design is put on it. Since the large bore engine is the engine of greater horse power únder the S. A. E. formula,, this testimony does not bear out plaintiff in error’s argument. The very definition of horse power shows that horse power does have some relation to damage to the roads through speed, weight, momentum, and friction. Horse power is a unit of power capable of lifting 33,000 pounds a foot •a minute. In the case of the heavy truck the work done is the haul of a load. The horse power of •the commercial truck is the capacity to pull weight.
 
 *655
 
 The court will take judicial notice that horse power has relation to the haul of a load; that hauling loads relates to weight, momentum and friction; and that weight, momentum, and friction affect the damage done to roads.
 

 It is no doubt difficult to set the exact point at which an increase in breakage occurs upon the road because of weight, momentum, and friction. It is not for this court to say where that critical point is. The damage done to the roads in the past may have influenced the Legislature to believe that an abrupt increase in breakage came, not with the use of a 35 horse power truck, but with the use of a 30 horse power truck.
 

 Plaintiff in error’s proposition seems to be one purely of degree. It admits that the Legislature, when it put the division line between motor trucks at 35 horse power, established a tax rate which had some small relation to the destruction of the roads, but claims that, when the Legislature put the line at 30 horse power, it established a tax rate which has no relation to the destruction of the roads. We cannot agree with this contention unless we are to admit that a taxpayer who is taxed at a certain rate secures a vested right to be taxed at that particular rate and never to have the tax changed, or, unless we are to admit that the Legislature cannot after passing a certain law, which is sustained as constitutional, later introduce a new classification within the terms of the same law. With these propositions we do not agree and the only case which we have found exactly in point supports our view.
 
 Ayres
 
 v.
 
 City
 
 
 *656
 

 of Chicago,
 
 239 Ill., 237, 87 N. E., 1073, of which syllabus 5 reads:
 

 “If a wheel tax ordinance is not, at the time it is passed, subject to the objection of discrimination, it cannot be rendered invalid on that ground by the subsequent introduction of a new class of vehicles which were not included within its terms; and the presumption must be indulged that there is no arbitrary discrimination in selecting the objects of taxation under it.”
 

 Every inequality complained of in this statute can be remedied by the Legislature. It is not for this court to interfere with the discretion of the Legislature in establishing a classification between motor vehicles, which has a reasonable basis in the relation between horse power and weight, momentum, and friction with their resulting damage to the roads.
 

 As the statute is founded upon a reasonable and not upon an arbitrary distinction, the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, and Conn, JJ., concur.