

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
ATTORNEY GENERAL

July 11, 1974

The Honorable A.R. Schwartz
Chairman, Senate Jurisprudence Committee
State Capitol Building
Austin, Texas

Opinion No. H- 344

Re: Whether prepaid health
insurance plans are subject
to insurance regulatory laws.

Dear Senator Schwartz:

Your letter on behalf of the Senate Jurisprudence Committee asking our opinion about prepaid health maintenance organizations and hereafter referred to as HMO's for convenience, points to the great variety of such plans and asks us to assume various factual situations and to state whether in each instance the plan would constitute a transaction of the business of insurance (and thus require regulation by the State Board of Insurance) or would be outside the insurance laws.

The question you pose is one which has long bothered the courts of the United States. See for instance, Jordan v. Group Health Association, 107 F. 2d 239 (D.C. Cir. 1939); Cleveland Hospital Service Association.v. Ebright, 45 N.E. 2d 157 (Ohio App. 1942); Commissioner of Banking and Insurance v. Community Health Service, Inc., 30 A. 2d 44 (N.J. 1943); California Physicians' Service v. Garrison, 172 P. 2d 4 (Cal. 1946); Maloney v. American Independent Medical and Health Association, 259 P. 2d 503 (Cal. App. 1953); Complete Service Bureau v. San Diego County Medical Society, 260 P. 2d 1038 (Cal. App. 1953); People v. California Mutual Association, 441 P. 2d 97 (Cal. 1968); Bloom v. Northern Pacific Beneficial Association, 193 N.W. 2d 244 (N.D. 1971). And see annotation "Validity and Nature of Group Medical and Hospital Service Plans," 167 ALR 322, 323.

In large part the problem has been compounded by the many and

varied definitions of what does constitute "insurance". See for instance Jordan v. Group Health Association, supra; Barmeier v. Oregon Physicians' Service, 243 P. 2d 1053 (Ore. 1952); Epmeier v. U.S., 199 F. 2d 508 (7th Cir. 1952); Metropolitan Police Retiring Association, Inc. v. Tobriner, 306 F. 2d 775 (D. C. Cir. 1962); Cleveland Hospital Service Association v. Ebright, 49 N. E. 2d 929 (Ohio 1943).

In Attorney General Opinion O-4986-A (1943) the question was whether a non-profit rural health service, incorporated for the purpose of promoting the health of its members, was engaged in the insurance business and thus subject to the supervision of the State Insurance Department. Members paid a membership fee in return for which they were furnished dental care, medical care, and drugs, etc., on a non-profit basis. The service had entered into agreement with various hospitals, physicians, dentists, and drugstores whereby the latter would agree to render services to members at agreed and standardized fees. However, a member was free to obtain needed services from any of the contracting physicians. Citing the definitions of then Article 4716, V. T. C. S. (now Article 3.01 of the Insurance Code), this office was unable to find that the health service fit the description of any type of insurance subject to state regulation and found that the service was not in the insurance business and was not subject to supervision of the State Insurance Department.

Opinion O-4986-A was ratified in Attorney General Opinion WW-1475 (1962) which held that a prepaid prescription plan under which a member could have a prescription filled for less than its normal selling price was insurance.

We agree with the conclusion of Opinion O-4986-A insofar as we conclude that none of the variations of the prepaid health care delivery systems which you describe fall within the defined types of insurance of Article 3.01 of the Insurance Code.

In fact, we have found only two instances where our statutes purport to regulate health maintenance services. One authorizes plans written for

residents of the State who are 65 years of age, or older. Article 3.71, Insurance Code, V. T. C. S. Another authorizes group hospital service plans under extremely limited circumstances. Articles 20.01 to 20.21, Insurance Code.

Therefore, whatever the details of the proposed prepaid health delivery system may be, we find no authorization in the Insurance Code for the State Board of Insurance to regulate such a plan, unless it comes within the scope of regulation authorized by either of these two articles or by some other article of the Insurance Code such as those for the provision of life, accident, health or casualty insurance.

In 1971 (Acts 1971, 62nd Leg., ch. 627, p. 2041) the Legislature adopted what appears as Article 4509a, authorizing the Texas State Board of Medical Examiners to approve and certify health organizations upon certain conditions. Delivery of health care to the public is one of several purposes for which such organizations may be formed. We do not pass upon or express any opinion as to the validity of Article 4509a in view of the fact that that very question is presently before the United States Court of Appeals for the 5th Circuit in Cause No. 73-2557, styled, Genaro Garcia v. Texas State Board of Medical Examiners, et al. See also Article 1396-2.01, V. T. C. S., and Attorney General Opinion H-128 (1973) with reference to the organization of Dental Health Service Corporations.

Whatever the validity of Article 4509a, its enactment by the Legislature in 1971 evidenced the intention of the Legislature that such an organization be regulated by the State Board of Medical Examiners and not by the Board of Insurance. California Physicians' Service v. Garrison.

We believe we may summarize what we have said as follows: While some of the plans which you have submitted to us may constitute the doing of an insurance business, there is no provision of the Code which would authorize the State Insurance Board to regulate or lay down guidelines for prepaid health delivery systems. The fact that the Legislature has enacted

Article 4509a, whether invalid or not, is another indication of the intent of the Legislature that such plans not be considered insurance.

While it has always been our practice to attempt to avoid answering hypothetical questions, we have answered your general question as well as we can because of the widespread interest in this important matter. However, it would be impossible for us to take each of the situations you pose and determine its validity. So too it would be impossible for us to answer the question you posed earlier in your letter as to whether there exist any so-called "legal barriers" to health care professional plans. We would only point out, as you are already aware, the limitations imposed by the Texas Medical Practice Act (Article 4495, V. T. C. S., et seq.) and the Hospital Authority Act, (Article 4437e, V. T. C. S.) as well as others of similar nature. Again, we express no opinion as to the validity of those limitations.

## SUMMARY

Except as to possible general regulation of an insurance company involved in a health maintenance organization, the State Board of Insurance has no regulatory power over prepaid health care delivery systems. Whether or not other regulatory authorities may have an impact on such systems will depend upon the facts of each type of plan.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee